In re the MARRIAGE OF Dorothy Louise DEANE and William Harrison Deane, IV.

Dorothy Louise DEANE, Respondent,

v.

William Harrison DEANE, IV, Appellant.

No. 16621.

Missouri Court of Appeals, Southern District, Division One.

Nov. 15, 1990.

James M. McClellan, Dempster, Barkett & McClellan, Sikeston, for appellant.

Charles Leible, Leible and Lawrence, Sikeston, for respondent.

CROW, Judge.

William Harrison Deane, IV ("William") appeals from a judgment (a) denying his motion to reduce child support, and (b) awarding his ex-wife, Dorothy Louise Deane ("Dorothy"), attorney fees of $1,200.

The parties' marriage was dissolved July 18, 1988. In conformity with a separation agreement and joint custody plan, the decree awarded the parties "joint legal and physical custody" of their four children, born October 5, 1976, October 13, 1978, August 23, 1983, and August 4, 1986, respectively. The parties' joint custody plan

provided, among other things: "Husband and Wife shall share equally between them the cost of the support and maintenance of the minor children until the children become emancipated. However, the parties agree that Husband shall pay the sum of Seven Hundred Fifty ($750.00) Dollars per month which equates to be One Hundred Eighty-seven and 50/100ths ($187.50) Dollars per child per month as and for maintenance and support of the minor children during their minority."

Pursuant to that provision the decree ordered William to pay Dorothy child support of $187.50 per month per child. The decree also ordered him to pay her maintenance of $200 per month for 24 months commencing August 1, 1988.

About a month after the decree the parties agreed each would have physical custody of all children one week at a time, i.e., Dorothy would have custody from 7:00 p.m., Sunday until 7:00 p.m., the ensuing Sunday, then William would have custody for an identical period. Custody would alternate thereafter in like manner.

On January 6, 1989, William married his present wife, Vicki. She has three children. They live with her and William.

On March 1, 1989, William and Vicki purchased a home, valued by William at $76,000. According to him, they borrowed $20,000 from his parents to make the down payment and some improvements. The home was subject to a $56,000 lien which William and Vicki assumed.

On March 2, 1989, seven and a half months after the dissolution, William filed his motion to reduce child support. It was heard September 26, 1989. At that time Vicki was pregnant; birth was expected in February, 1990.

At the time of the dissolution Dorothy was employed at a bank. Interrogatory answers dated May 9, 1988, showed her gross wages there as $292.55 semi-monthly. In August, 1989, a month before the modification hearing, Dorothy commenced

employment as a school teacher at a gross annual salary of $18,427.

At the time of the dissolution William was a partner with his father and brother in a farming operation. William took a "monthly draw" of $3,000 from the partnership. According to William, those circumstances remained unchanged at the time of the modification hearing. William deposits this income in his and Vicki's joint checking account.

Vicki receives $120 per week child support from her ex-husband. She deposits it in the same joint account.

William and Dorothy presented extensive evidence regarding their current expenses. A detailed account of that evidence is unnecessary.

The trial court found Dorothy's expenses had increased since the dissolution and her income had doubled since then. The trial court further found William's income had not decreased since the dissolution, nor had his expenses increased since then except as a result of his new marriage and support of his stepchildren. The trial court concluded these changes were not so substantial and continuing as to make the child support in the dissolution decree unreasonable.

In this appeal William avers there was evidence to support a finding of a change in circumstances sufficient to warrant reduction of his child support obligation. He maintains (a) Dorothy's gross annual income had increased from $8,582[1] to $18,427, (b) Dorothy's monthly expenses had decreased, not increased, (c) his financial resources had decreased with respect to his reasonable expenses, (d) a month after the dissolution he began keeping the children half the time and providing their necessaries when they are with him, and (e) the trial court should have given substantial consideration to the "Missouri Child Support Guidelines" issued by the Missouri Child Support Guidelines Task Force in September, 1987,[2] but failed to do so.

---

1. William takes this figure from Dorothy's 1988 federal income tax return.

2. The guidelines are found in Missouri Cases, West Publishing Co., 735–736 S.W.2d pp. XL to XLVIII. They should not be confused with the "Presumed Child Support Amount" computed

Section 452.370.1, RSMo Supp.1988, provides:

"... the provisions of any decree respecting ... support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse ... with whom he or she cohabits...."

The burden of proving changed circumstances satisfying the requirements of § 452.370.1 is upon the party seeking modification. *Magaletta v. Magaletta,* 691 S.W.2d 457, 459[2] (Mo.App.1985); *Moran v. Moran,* 681 S.W.2d 510, 512[1] (Mo.App. 1984). Where there has been a short period of time between the original decree and the filing of the motion to modify, the moving party must show an extraordinary change in circumstances. *Etling v. Etling,* 747 S.W.2d 285, 286–87[1] (Mo.App.1988); *Foster v. Foster,* 673 S.W.2d 108, 110[6] (Mo.App.1984).

As to Dorothy's increase in income, William cites no case holding that an increase in income of a parent receiving child support requires a reduction of child support.

■ It has been held that an increase in income of an ex-wife receiving maintenance does not per se provide a basis for reducing maintenance. *Crowell v. Crowell,* 742 S.W.2d 244, 247[6] (Mo.App.1987); *Magaletta,* 691 S.W.2d at 459[3]. It has also been held that an increase in income of a parent paying child support is not a sufficient reason to increase child support, but only a factor in determining his ability to provide greater support when there is a substantial and continuing change in circumstances warranting an increase. *Etling,* 747 S.W.2d at 287[3]; *Bellis v. Bellis,* 664 S.W.2d 12, 13[1] (Mo.App.1983).

To hold that a parent paying child support is entitled to a reduction if the parent receiving it obtains a higher paying job could stifle the latter's incentive to seek more remunerative employment. We decline to adopt such a rule.

■ In support of his allegation that Dorothy's monthly expenses have decreased, William points out certain differences between a statement of expenses filed by her prior to the dissolution and a statement of expenses filed by her prior to the modification hearing. The latter statement, however, did not include any sum for repaying loans incurred by Dorothy after the dissolution. She testified she borrowed some $5,250 for living expenses after the dissolution and she refinanced a loan on her motor vehicle to reduce the monthly payment and obtain funds for insurance and other needs. Additionally, $108.55 is now withheld from her monthly pay for health insurance on the children. Given this evidence we cannot say the trial court erred in finding Dorothy's expenses had increased since the dissolution.

■ William's alleged decrease in financial resources supplies no basis for reducing child support. He testified he had to buy a larger residence when he married Vicki in order to house her and her three children. William conceded he spent about $2,000 on a honeymoon with Vicki and maybe another $2,000 on engagement and wedding rings. As noted earlier, the trial court found that any increase in William's expenses was the result of his new marriage and support of his stepchildren. The evidence is sufficient to support that finding. A father's remarriage and voluntary assumption of support of his stepchildren is immaterial to the determination of his obligation to support his own children. *Young v. Young,* 762 S.W.2d 535, 536[1] (Mo.App. 1988); *Donnelly v. Donnelly,* 648 S.W.2d 898, 900[5] (Mo.App.1983). Furthermore, Vicki receives $120 per week child support from her ex-husband which is deposited in her and William's bank account and presumably applied to their expenses. Finally, William's maintenance obligation was

per Rule 88.01, Missouri Rules of Civil Procedure (1990), effective April 1, 1990.

scheduled to end with the installment that became due July 1, 1990. This will save him $2,400 annually.

Regarding William's argument that he now has custody of his children a greater proportion of the time than he did when the dissolution was granted, we note the following provisions in the joint custody plan: "The physical placement of such children shall be shared by the parents in such a way as to assure the children frequent and continuing contact with both parents. This arrangement is to be established with the intention that both Husband and Wife shall continue the 'co-parenting' atmosphere, which the parties and the minor children have been maintaining.... Husband and Wife agree that they will continue to schedule visitation on such terms as will allow, as closely as possible, the children to spend equal time with each of them."

It is evident from the joint custody plan—incorporated by reference in the dissolution decree—that the parties envisioned a physical custody arrangement whereby the children would spend equal time with each parent. The alternate week custody scheme implemented this objective. William admitted at the modification hearing that Dorothy wanted him to have custody of their children only every other weekend, but he insisted on equal custody. Dorothy testified she would agree "[i]n a second" to have custody of the children a greater proportion of the time. As the current arrangement is consistent with the stated objective of the joint custody plan, we reject William's contention that the arrangement constitutes a substantial and continuing change in circumstances.

William's assertion that the trial court should have given substantial consideration to the Missouri Child Support Guidelines[3] is likewise no basis for reversal.

■ First of all, the trial court's refusal to reduce the child support to a figure which (according to William) met the guidelines does not mean the trial court failed to consider them. Indeed, when William's lawyer cited the guidelines, the trial court said: "I'm aware that I'm supposed to con-

sider this. And I will certainly do that." More importantly, however, the guidelines are not to be applied rigidly or automatically; they are simply formulas or schedules to consider which leave significant room for sound judicial discretion. *Reese v. Reese*, 755 S.W.2d 437, 438 (Mo.App.1988). Finally, this is not a case where the trial court was called upon to set child support. The parties agreed on the amount at the time of the dissolution. To obtain a reduction William was required by § 452.370.1 to show a change in circumstances so substantial and continuing as to make the amount in the dissolution decree unreasonable. Absent such showing, reduction of William's child support obligation was unauthorized.

■ Our review of a trial court's adjudication of a motion to modify a dissolution decree as to child support is limited to determining whether the judgment is supported by substantial evidence, whether it is against the weight of the evidence, whether it erroneously declares the law, or whether it erroneously applies the law. *Wiebusch v. Deke*, 762 S.W.2d 521, 524[5] (Mo.App.1988); *Markowski v. Markowski*, 736 S.W.2d 463, 465[1] (Mo.App.1987). Applying that standard to the record here, we reject William's contention that the trial court erred in finding there was no change in circumstances so substantial and continuing as to make the existing child support unreasonable.

William also complains the trial court erred in awarding Dorothy attorney fees of $1,200.

■ An award of attorney fees in a proceeding to modify a decree of dissolution is within the discretion of the trial court and its decision will be overturned on appeal only if discretion is abused. § 452.355.1, RSMo Supp.1988; *Kieffer v. Kieffer*, 590 S.W.2d 915, 918–19 (Mo. banc 1979); *Seelig v. Seelig*, 540 S.W.2d 142, 147–48[12] (Mo. App.1976).

■ We have referred to the parties' respective financial resources earlier in this opinion. Neither has excess funds. It

**3.** Footnote 2, *supra*.

should be noted, however, that William brought the modification proceeding. Dorothy sought no modification, but only to preserve what she had agreed to at the time of the dissolution. The trial court was allowed to consider these circumstances on the attorney fee issue. *Becker v. Becker,* 745 S.W.2d 229, 232–33 (Mo.App.1987); *Wood v. Wood,* 709 S.W.2d 143, 147–48 (Mo.App.1986).

There was evidence that Dorothy's attorney fees exceeded $1,800. She had paid nothing. The trial court did not abuse its discretion in awarding Dorothy attorney fees of $1,200.

Judgment affirmed.

MAUS, P.J., and PREWITT, J., concur.